UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
──────────────────────────────────────X

UNITED STATES OF AMERICA,

    -against-                                                   11 Cr. 569  (PAC)

ANTHONY TORRES

                              Defendant.
──────────────────────────────────────X


**SENTENCING MEMORANDUM ON BEHALF
OF THE DEFENDANT ANTHONY TORRES**


                          James E. Neuman, Esq.
                          Attorney for Defendant Anthony Torres
                          100 Lafayette Street
                          Suite 501
                          New York, NY 10013
                          (212) 966-5612

**Preliminary Statement**

This memorandum is submitted on behalf of Anthony Torres  Attached hereto collectively as Exhibit "A" are several letters from his friends and family.[1]  In July, 2011, Mr. Torres was charged in two counts of a nine-count indictment, i.e: conspiracy to distribute five or more kilograms of cocaine, and 1,000 or more kilograms of marijuana, between 2003 and July, 2011, in violation of 21 U.S.C. § 841(b)(1)(A), and; possession of a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(iii).  On February 7, 2012, Mr. Torres voluntarily surrendered.  On November 20, 2012, Mr. Torres pled guilty to Count One of the indictment pursuant to a plea agreement, which stipulated a guidelines range of 108-135 months.  In view of Mr. Torres' personal background – which does not include any prior convictions – we submit that the statutory minimum of 120 months would be sufficient to meet the sentencing factors set forth in 18 U.S.C. § 3553(a).

Mr. Torres' personal background

The pre-sentence investigation report (hereinafter "PSR") indicates that Mr. Torres had a relatively uneventful early childhood.  Now 33 years old, he was born and raised in Brooklyn, along with six siblings.  PSR ¶ 63. His father, now deceased, was a foreman and able to provide sufficiently for his family. PSR ¶ 74.  The attached letters make clear that Mr. Torres was a devoted family member even at a young age.  His younger sister, Gliced, recalls that Mr. Torres cared for her when she was sick and his parents were unavailable. Other siblings and relatives similarly describe him as a thoughtful, respectful and generous child. Further, his older sister, Olga, notes that he was

---

[1] The letters are unsigned because they were emailed to counsel.

very bright and at one point was accepted into a program for gifted children. All agree that he was a good student and seemed headed for college. As a young teenager, his future appeared promising.

His situation changed, however, as his parents' marriage disintegrated. When he was about 14 years old, his parents divorced and Mr. Torres went to Puerto Rico to live with his father, removing him from his mother and some siblings who remained with her. The move also deprived Mr. Torres of the opportunity to enroll in the gifted children program. PSR ¶¶ 64- 67, 79. His younger sister, Gliced , reports that the divorce was very hard on her and Mr. Torres and that their life then was "rough." During this period, Mr. Torres began smoking marijuana. By the time he was 16 years old, he was smoking marijuana on a daily basis. PSR ¶ 74. In retrospect, Olga believes that Mr. Torres would have progressed farther, academically and otherwise, had he not been brought to Puerto Rico.

For about 17 years, Mr. Torres lived in Puerto Rico. Yet, throughout those years, Mr. Torres remained close with his family, including those who stayed in New York. He sent letters and postcards to his siblings who lived away from him. He brought them gifts when he visited New York. And when he returned to New York approximately three to four years ago, he continued to stay in close touch with his entire family. Olga notes that he has been a "caring and doting" uncle to her children, lending support to all of them at times of mourning and sickness. His cousin, Ceslee, confirms that Mr. Torres has been a "good friend, cousin, and father to his children." Moreover, he has been a source of encouragement and support to friends and family alike. His aunt, Mireya, emphasizes that Mr. Torres is both generous and humble, and consistently "thinks of helping others before helping himself."

Notably, Mr. Torres has demonstrated a proclivity for finding gainful employment. In 1998-99, he worked as a cook. PSR ¶ 78. Between 2001-2010, he worked regularly as a forklift driver in Puerto Rico. PSR ¶ 78. In addition, Mr. Torres has fathered several children. While still a teenager, he began a relationship with a neighbor and together they had a son, who is now 15 years old. In 1999, Mr. Torres began a 7-year relationship with Zaida Pagan. The two of them had three children, who are now between 9 and 13 years old. PSR ¶¶ 68-70.

<u>The criminal conduct</u>

The conspiracy charged in Count One is wide-ranging, involving over two dozen individuals during an eight-year period. A number of the defendants allegedly committed murders in connection with the drug conspiracy. According to the PSR, however, Mr. Torres' role was relatively limited (though not so limited as to warrant a role reduction). He is described as a "street level 'pitcher,'" who was responsible for hand-to-hand sales of powder cocaine. PSR ¶ 44. The PSR indicates that the amount of cocaine attributable to his conduct is 5-10 kilograms of cocaine. Mr. Torres aided and abetted the possession of firearms, but there is no allegation that he personally discharged any weapons. PSR ¶ 46.

<u>Plea</u>

On November 20, 2012, Mr. Torres pled guilty to Count One of the indictment pursuant to a plea agreement. The parties stipulated to the following guideline calculation. Because the offense level involved between 5-10 kilograms of cocaine, the base offense level was deemed to be 32, pursuant to U.S.S.G. § 2D1.1(c)(4). Because a firearm was possessed, two levels were added. Reducing 3 levels for acceptance of responsibility, the adjusted offense level was set at 31. Insofar as Mr. Torres had no zero criminal history points, his Criminal History Category was said to be I,

yielding a sentencing guideline range of 108-135 months of imprisonment. Taking into account the statutory minimum of ten years, the effective guideline range was 120-135 months. In addition, the parties agreed that neither would seek a departure or suggest that a non-guideline sentence was appropriate. PSR ¶ 22.

### The PSR

The revised PSR contains a few minor errors.[2] When describing the plea agreement, the PSR states that "the parties agree that either party may seek a sentence outside of the Stipulated Guidelines Range," or suggest that the Probation Office or court consider a sentence outside of that range. PSR ¶ 22. This is incorrect. As noted earlier, the plea agreement says that the parties agree not to seek a sentence outside the range or make such suggestions to either the probation office or court.

Later, under the section referring to "the offense conduct," the PSR indicates that "[o]ver the course of the offense, Torres possessed firearms, and did aid and abet the use, carrying, and possession of handguns, which were discharged." ¶ 46. This paragraph is somewhat misleading to the extent it suggests that Mr. Torres physically carried or discharged a handgun, neither of which is true.

In any event, the probation office ultimately recommends that Mr. Torres be sentenced to 120 months of imprisonment, explaining, "[w]e believe that this sentence should serve as an adequate amount of time to provide punishment and deterrence of future criminal activity, as well as monitor the defendant when he returns to the community."

---

[2] Contrary to the addendum in the PSR, the defense did raise these objections, in a letter dated February 7, 2013.

Meanwhile, numerous co-defendants have pled guilty. As of the date of this memorandum, the co-defendants who have been sentenced include: Lucy Romero (sentenced to 60 months of imprisonment); Mauricio Villareal (60 months); James Rivera (87 months); Angel Diaz (120 months); and Jose Luis Moran (120 months).

## THE STATUTORY SENTENCING FACTORS WARRANT THE IMPOSITION OF THE STATUTORY MINIMUM SENTENCE OF 120 MONTHS OF INCARCERATION

The very first sentence of 18 U.S.C. § 3553(a) declares that the court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of this subsection." § 3553(a)(1) then directs the sentencing court to consider "the nature and circumstances of the offense and the history of the defendant," and subsection(a)(2) direct the court to consider the need for the sentence:

> "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

Among other factors that must be considered are "the kinds of sentences available," such as community service or home detention, (subsection 3), the sentencing guidelines (subsection 4), and the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar crimes (subsection 6). *See generally, United States v Salinas,* 365 F.3d 582, 589 (7th Cir. 2004).

In this case, the stipulated guideline range is 108-135 months. Because the statute sets a minimum sentence of ten years, the range is effectively 120-135 months. We submit that due consideration of the statutory factors leads to the conclusion that a sentence of 120 months is warranted.

To begin with, Mr. Torres' conduct – though obviously serious – was not as egregious as the leaders of the conspiracy. Simply put, he was responsible for hand-to-hand sales of drugs. Though he reportedly aided and abetted the possession of a firearm that was used by various members of the conspiracy, he never discharged the weapon himself. For this type of conduct, a sentence of ten years certainly is sufficient "to reflect the seriousness of the offense, promote respect for the law, and **** provide just punishment for the offense. *See generally,* 18 U.S.C. § 3553(a)(2)(A). Similarly, such a sentence certainly would "afford adequate deterrence" to criminal conduct by others. *See generally,* 18 U.S.C. § 3553(a)(2)(B).

A sentence of 120 months would also be consistent with the types of sentences imposed upon co-defendants so far. As of the date of this memorandum, two co-defendants have been sentenced to 60 months of imprisonment, one has been sentenced to 87 months and two have been sentenced to 120 months. Thus, imposing a sentence of 120 months upon Mr. Torres would avoid "unwarranted sentencing disparities." 18 U.S.C. § 3553(a)(6).

Considering Mr. Torres' background, a sentence of 120 months would also be sufficient to protect the public from him committing further crimes. *See generally,* 18 U.S.C. § 3553(a)(2)(C). Importantly, Mr. Torres is 33 years old, but has never been convicted or even arrested before. The absence of a criminal history suggests that he is not a hardened criminal who is beyond redemption. Similarly, the impact of a lengthy sentence is likely to be particularly strong insofar as he has never

experienced prison until now. In fact, even a sentence half as long as the statutory minimum would serve as a resounding wake-up call, sufficient to deter Mr. Torres from further crime.

Moreover, Mr. Torres' family and employment history provide reasons to be optimistic about his future. As a child, Mr. Torres was considered to be a good student with a promising future. But when his family life was disrupted and he was removed to Puerto Rico, he developed a life-long reliance on marijuana. Still, he worked lawfully for about twelve years, first as a cook and then a forklift operator. Mr. Torres' innate intelligence, skills and employment history should enable him to find work whenever he is released.

Perhaps most important, Mr. Torres enjoys the support of a network of friends and extended family. The attached letters make clear that Mr. Torres remains a cherished member of the family. In vivid detail, the letters illustrate that he has been a source of comfort and support to his older and younger relatives alike. Such support from his loved ones inspires confidence that Mr. Torres should be able make a smooth transition whenever he is released.

For all the foregoing reasons, we respectfully submit that a sentence of 120 months of incarceration served will be sufficient, but not greater than necessary, to meet the various objectives set forth in 18 U.S.C. § 3553(a). Indeed, that is the also the conclusion and recommendation of the probation office. Such a sentence would simultaneously reflect the seriousness of the offense, while promoting respect for the law, and providing just punishment for the offense. *See generally,* 18 U.S.C. § 3553(a)(2)(A).

Dated: New York, NY
February 20, 2012

          /s /
James E. Neuman, Esq.
Attorney for Defendant Anthony Torres
100 Lafayette Street
Suite 501
New York, NY 10013
(212) 966-5612


cc:    Telemachus P. Kasulis, AUSA (by email)
        Jessica Masella, AUSA (by email)